

# In the
# Missouri Court of Appeals
# Western District

| | | |
|---|---|---|
| MARK ROWLAND AND BRENDA ROWLAND, | ) ) ) | |
| | ) | **WD83877** |
| Appellants, | ) | |
| | ) | **OPINION FILED: March 2, 2021** |
| v. | ) | |
| | ) | |
| KEITH A. QUEVREAUX, TRUSTEE OF THE KEITH A. QUEVREAUX REVOCABLE TRUST U/T/A DATED JULY 23, 2012, | ) ) ) ) ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Boone County, Missouri**
The Honorable Jonathan H. Jacobs, Judge

Before Division Three: Karen King Mitchell, Presiding Judge, Gary D. Witt, Judge and
Anthony Rex Gabbert, Judge

Mark and Brenda Rowland (collectively "the Rowlands") appeal from the

judgment of the Circuit Court of Boone County entering summary judgment against the

Rowlands and in favor of the Keith A. Quevreaux Revocable Trust u/t/a/ Dated July 23,

2013 ("Quevreaux Trust") on the Rowlands' claim for reformation of two deeds. We

affirm.

## Statement of Facts[1]

The Lucreta Olden Revocable Trust ("Olden Trust") owned a farm consisting of 187.61 acres more or less. On October 5, 2006, the Olden Trust executed a deed conveying a tract of land in the southern portion of the farm to Keith Quevreaux ("Quevreaux") containing 63.73 acres more or less ("Olden-Quevreaux Deed").[2] On December 20, 2006, the Olden Trust executed a deed conveying a tract of land in the northern portion of the farm to the Rowlands containing 123.88 acres more or less ("Olden-Rowlands Deed"). At some point before the farm was divided, the Rowlands allege in their petition that they and Quevreaux entered into an oral agreement that a curved fence line[3] would serve as the boundary between the northern and southern tracts of land. However, the surveyor did not follow the curvature of the fence line when surveying and describing the property to be conveyed, but instead "shot a straight line" from one fence post across the farm to another fence post. Approximately .95 acres of land was between the straight line of the survey and the curve of the fence line (that bows south of the survey line). The Rowlands leased the northern tract of land to be farmed by a tenant, and their tenant farmed up to the old fence line until Quevreaux discovered the discrepancy in December 2013 and the underlying dispute arose.

---

[1] "The record below is reviewed in the light most favorable to the party against whom summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record. However, facts contained in affidavits or otherwise in support of the party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion." *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 453 (Mo. banc 2011) (quoting *Hammack v. Coffelt Land Title, Inc.*, 284 S.W.3d 175, 177-78 (Mo. App. W.D. 2009)).

[2] On July 23, 2012, Quevreaux executed a deed conveying the southern tract to himself as trustee of the Quevreaux Trust.

[3] The parties dispute whether the proposed boundary line was a "fence line" or a "tree line" because the fence line had grown up with trees, however, such dispute is irrelevant to our analysis.

On August 20, 2015, the Rowlands petitioned the circuit court solely requesting the court to reform the Olden-Rowlands Deed and the Olden-Quevreaux Deed to reflect the intended boundary, which would remove approximately .95 acres from the southern tract and add it to the northern tract.

On February 10, 2020, Quevreaux filed a Motion for Summary Judgment alleging that the alleged agreement made between the Rowlands and Quevreaux was not in writing and "was man-to-man." Quevreaux argued in his Suggestions in Support that the alleged oral agreement between the Rowlands and Quevreaux pre-dates the 2006 transactions and the Statute of Frauds[4] barred the reformation. On May 19, 2020, the circuit court granted summary judgment in favor of Quevreaux and against the Rowlands. This appeal followed.

## Standard of Review

Inexplicably, while acknowledging that the trial court granted summary judgment, the Rowlands assert our review is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), which governs judgments entered following a bench-trial. However, our standard of review is governed by *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 452-53 (Mo. banc 2011), which provides:

> The trial court makes its decision to grant summary judgment based on the pleadings, record submitted, and the law; therefore, this Court need not defer to the trial court's determination and reviews the grant of summary judgment *de novo*. In reviewing the decision to grant summary judgment, this Court applies the same criteria as the trial court in determining whether summary judgment was proper. Summary judgment is only proper if the moving party establishes that there is no genuine issue as to the material

---

[4] Missouri's Statute of Frauds is contained in Section 432.010 R.S.Mo. (2016).

3

facts and that the movant is entitled to judgment as a matter of law. The facts contained in affidavits or otherwise in support of a party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion. Only genuine disputes as to material facts preclude summary judgment. A material fact in the context of summary judgment is one from which the right to judgment flows.

(internal quotation marks and citations omitted).

## Discussion

The Rowlands raise three points on appeal. First, they assert the circuit court erred in granting summary judgment in favor of Quevreaux arguing the circuit court misapplied the law in that the court based its decision on the premise that the Statute of Frauds prohibits the reformation of a misdescribed boundary in deeds of adjoining properties based on mutual mistake when the parties had orally agreed to the boundary line. Second, they argue the trial court erred in granting summary judgment in favor of Quevreaux because it implicitly misstated the law in that the court necessarily based its decision on the premise that reformation of a misdescribed boundary in deeds of adjoining properties based on mutual mistake was prohibited by the Statute of Frauds since the parties had orally agreed to the boundary. Finally, the Rowlands allege the circuit court erred in granting summary judgment in favor of Quevreaux because it misapplied the law to the facts in that the court ruled that reformation of a misdescribed boundary in deeds of adjoining properties was prohibited by the Statute of Frauds in that both the deeds had already been executed and recorded, and full performance takes this case "out of the statute of frauds."

4

But, "[a] summary judgment, like any trial court judgment, can be affirmed on appeal by any appropriate theory supported by the record." *Mo. Bankers Ass'n, Inc. v. St. Louis Cnty.*, 448 S.W.3d 267, 270-71 (Mo. banc 2014). Because there is no genuine issue of material fact on the record before us and because Quevreaux is entitled to judgment as a matter of law, summary judgment is appropriate, and the issue of whether the Statute of Frauds prohibits the reformation of the deed in the instant case is irrelevant.

To establish a claim for reformation, a petitioner must demonstrate: (1) a preexisting agreement between the parties, (2) a scrivener's error in drafting the agreement, and (3) that the mistake was *mutual as between the grantors and the grantees*. *Ethridge v. TierOne Bank*, 226 S.W.3d 127, 132 (Mo. banc 2007) (emphasis added). "Reformation of a written instrument is an extraordinary equitable remedy and should be granted with great caution and only in clear cases of fraud or mistake." *Id.* (quoting *Morris v. Brown*, 941 S.W.2d 835, 840 (Mo. App. W.D. 1997). Furthermore, it is well established that the power to reform written instruments "is limited to the original parties or those claiming in privity under them[.]" *Swearengin v. Swearengin*, 202 S.W. 556, 557 (Mo. 1918) (citing *Brown v. Tuschoff*, 138 S.W. 497 (Mo. 1911); *Sicher v. Rambousek*, 91 S.W. 68 (Mo. 1906)); *Robo Sales, Inc. v. McIntosh*, 495 S.W.2d 420, 423 (Mo. 1973); *US Bank, N.A. v. Smith*, 470 S.W.3d 17, 25 (Mo. App. W.D. 2015).

The Rowlands alleged in their own statement of uncontroverted facts, which fact was admitted by Quevreaux, that:

> The real estate contracts resulting in the division of the Lucretea [sic] Olden Revocable Trust farm in 2006 were not between [the Rowlands] and [Quevreaux, the parties] herein but rather were between the Trustee of the

5

Olden Trust, their common grantor, and [the Rowlands] and [Quevreaux] respectively. . . .

In *Hadlock v. Poutre*, 423 A.2d 835, 836 (Vt. 1980), the MacKays owned a tract of land, and they conveyed one acre of that land to the Thompsons. *Id*. at 836. The MacKay-Thompson deed described the boundary as providing 200 feet of road frontage, running from an iron pin at the corner of an adjoining lot to another iron pin, but the iron pins did not exist. *Id*. Subsequently, the MacKays sold another portion of the land to the Emerys, and the Emerys subsequently conveyed part of this property to the Poutres. *Id*. Before the conveyance to the Emerys, the MacKays had built a horse fence, which was located on Thompsons' property according to the MacKay-Thompson Deed. *Id*. The Poutres relied on MacKay's and Emery's statements that the horse fence was the boundary line and constructed a barn on a portion of land that had been deeded to the Thompsons. *Id*. The Hadlocks purchased the Thompson property three years after the barn had been built and commissioned a survey. *Id*.

The Poutres petitioned the court to reform the MacKay-Thompson deed to reflect the horse fence was the intended boundary line, but the court held that "the right to seek reformation of a deed is limited to the original parties to the deed and their successors in title," and held that parties not in the chain of title to the relevant deed lacked standing to seek reformation of that deed. *Id*. at 837 (citing *Hilton v. Hilton*, 41 S.E.2d 880 (Ga. 1947)). The court reasoned that because the MacKay-Thompson deed preceded all of the other deeds, the MacKays could not convey land which they had previously conveyed to

6

another party. *Id*. Thus, the court concluded that the boundaries of the Thompson property could not be altered by the subsequent MacKay-Emery deed. *Id*.

Similarly, in the instant case the Rowlands bring a claim of reformation pertaining to the Olden-Quevreaux Deed and the Olden-Rowlands Deed claiming that approximately .95 acres of land conveyed in the Olden-Quevreaux Deed should have been conveyed in the Olden-Rowlands Deed because the Rowlands and Quevreaux had orally agreed the fence line would be the boundary. However, just as in *Hadlock*, the Rowlands are not in the chain of title for the property conveyed through the Olden-Quevreaux Deed and thus cannot seek reformation of the Olden-Quevreaux Deed. Furthermore, the Olden Trust could not have conveyed the disputed .95 acres in the Olden-Rowlands Deed, because the Olden Trust had already conveyed that property months prior. *See Koviak v. Union Elec. Co.*, 442 S.W.2d 934, 939 (Mo. 1969) (landowner could not defeat another's title by conveying property she did not own). Further, the Olden Trust, which was a party to each of the deeds in question is not a party to this case and Rowlands has not alleged nor proven that the Olden Trust shared any mistaken belief as to the property conveyed by the two deeds.

Moreover, "[t]o establish a mutual mistake, . . . 'it is sufficient to show [the parties to the transaction] agreed to accomplish a particular object by the instrument to be executed and that such instrument, as executed, is insufficient to effectuate their intention." *Fastnacht v. Ge*, 488 S.W.3d 178, 185 (Mo. App. W.D. 2016) (quoting *Thompson v. Koenen*, 396 S.W.3d 429, 434 (Mo. App. W.D. 2013)). Here, there is no allegation that the Rowlands and Quevreaux ever intended to memorialize their separate

7

agreement. Therefore, because the Rowlands and Quevreaux entered into a separate agreement and were not in privity with one another in either the Olden-Rowlands Deed or the Olden-Quevreaux Deed, the Rowlands have failed to satisfy the third prong necessary to raise a claim of reformation—that the mistake was mutual *between the grantors and grantees*—the Rowlands' claim for reformation fails as a matter of law.

## Conclusion

We affirm.

_____
Gary D. Witt, Judge

All concur